UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

NANCY M. MEEKS,                          )
                                         )
        *Plaintiff*,                     )
                                         )
v.                                       )          No. 4:17-cv-45-SKL
                                         )
COMMISSIONER OF SOCIAL SECURITY,         )
                                         )
        *Defendant*.                     )

## MEMORANDUM AND ORDER

Plaintiff Nancy M. Meeks ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment [Docs. 12 & 18] and filed supporting briefs [Docs. 13 & 19]. This matter is now ripe. For the reasons stated below, (1) Plaintiff's motion for judgment on the pleadings will be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment will be **DENIED**; and (3) the decision of the Commissioner shall be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.      ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for DIB in January 2016, alleging disability as of December 1, 2012 (Transcript [Doc. 9] ("Tr.") 12, 65, 159-60). Plaintiff's claim was denied initially and on reconsideration at the Social Security Agency ("SSA") level. After a hearing, an administrative law judge ("ALJ") found Plaintiff was not under a disability as defined in the Social Security Act (the "Act") (Tr. 9-21). The Appeals Council denied Plaintiff's request for review, making the

ALJ's decision the final decision of the Commissioner (Tr. 1-5). Plaintiff timely filed the instant action [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born in June 1973, which made her a "younger individual," on the alleged onset date (Tr. 12, 20, 159). Plaintiff has a high school education, is able to communicate in English, and has past relevant work as a house cleaner (Tr. 20).

### B.     Medical Records

In her Disability Report, Plaintiff alleged disability due to the following conditions: "[b]lind" and asthma physical health issues and bipolar, depression, attention deficit disorders, borderline multiple personality disorder, and agoraphobia mental health issues (Tr. 169). Plaintiff's medical records reveal multiple diagnoses including bipolar disorder types I and II, complex post-traumatic stress disorder, borderline personality disorder traits, mood disorders, agoraphobia, and dysthymic disorder (persistent depression) and extensive treatment for same (*e.g.*, Tr. 235, 257, 262, 435-36, 455, 461, 525). The parties and the ALJ recite many aspects of Plaintiff's various medical records and issues. While all relevant records have been considered, the Court will discuss Plaintiff's medical history and records only to the extent necessary to address the pertinent issues raised in this case.

### C.     Hearing Testimony

The administrative hearing was held on April 18, 2017, and Plaintiff, her ex-husband, and a vocational expert ("VE") testified (Tr. 26-64). The Court has reviewed the testimony from the hearing. In short, Plaintiff testified that her ex-husband made her get out of bed and take showers

because otherwise she did not keep up with her hygiene, that she needed reminders to take her medicine and sometimes to eat, and that she lacks the desire to do anything but stay in her room (Tr. 31). Plaintiff said this behavior had gone on for years but has gotten significantly worse during the last two to three years (Tr. 31-32). Plaintiff has passed out at grocery stores from panic attacks and had three to four times panic attacks per day between June 2014 and her hearing date; her most recent panic attack was at a place of business a few days/weeks prior to the hearing (Tr. 36-41). Plaintiff presented to an emergency room two weeks before the hearing due to a severe panic attack at her home that she mistook as a heart attack (Tr. 41-42).

Plaintiff claimed to experience auditory or visual hallucinations on a daily basis from June of 2014 through the date of the hearing (Tr. 43-44). Plaintiff testified she is accompanied by someone when she goes out in public, she does not visit anybody, she does not go to church, and she does not participate in other social activities (Tr. 41, 44). Her ex-husband often picks up her medications (Tr. 44). Being in unfamiliar places negatively affects Plaintiff's anxiety causing her to experience sweating, nervousness, difficulty breathing, and crying spells (Tr. 45). She has kept her curtains closed since she was "little" because she feels like somebody is watching her (Tr. 46-47). She believes her anxiety, paranoia, and depression prevent her from leaving her home most days of the week (Tr. 50). Plaintiff s ex-husband essentially confirmed Plaintiff's testimony (Tr. 53-55).

As pertinent, the VE testified that a hypothetical person who would be absent from work three days a month could not perform Plaintiff's past work or any other work (Tr. 58-59).

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The SSA determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.      The ALJ's Findings**

At step one of the sequential process, the ALJ found that Plaintiff met the insured status requirements through the relevant time and had not engaged in substantial gainful activity since her alleged onset date, December 1, 2012 (Tr. 14). At step two, the ALJ found Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome; status post release; anxiety disorder; bipolar disorder; borderline personality disorder; posttraumatic stress disorder ("PTSD"); and attention deficit hyperactivity disorder ("ADHD") (Tr. 14-15). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels with the following non-exertional limitations: bilateral upper extremities, handling and fingering is limited to frequent; limited to simple, routine, repetitive tasks not at a production rate pace; no contact with the public; only occasional contact with coworkers or supervisors; only simple work related judgments; only infrequent and gradual changes in routine and work setting.

(Tr. 17). At step four, the ALJ found Plaintiff was able to perform her past relevant work as a house cleaner (Tr. 20). The ALJ also made an alternative finding at step five that Plaintiff was

able to perform other work existing in significant numbers in the national economy (Tr. 20-21). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the ALJ's decision (Tr. 21).

## IV.    ANALYSIS

The ALJ found that Plaintiff's impairments caused work-related limitations, but did not preclude her from a reduced range of work.  Plaintiff does not challenge the ALJ's evaluation of her physical impairments or the RFC limitations that account for her physical limitations[1] so they are not addressed herein.  Plaintiff, however, does argue the ALJ improperly considered and weighed the opinion of Plaintiff's treating psychologist, Joe Bean, Ph.D., in assessing Plaintiff's RFC.  Dr. Bean is the only treating source that provided medical source statements.

### A.  Standard of Review

The Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C.

---

[1] A claimant's RFC is the most the claimant can do despite his or her impairments.  20 C.F.R. § 404.1545(a)(1).  In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other." *Griffeth*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal quotation marks and citations omitted).  An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (citation omitted).

§ 405(g)). Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited

by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. The ALJ's Consideration of Medical Opinions

Plaintiff makes a sentence-four argument for reversal or remand. As noted, Plaintiff argues the ALJ failed to weigh properly the medical opinions of Dr. Bean regarding her mental health issues/limitations and failed to give good reasons for affording little weight to Dr. Bean's opinions under the "treating physician rule."[2] The Commissioner argues that substantial evidence supports

---

[2] On January 18, 2017, the SSA published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844-01). The current regulation is titled "Evaluating opinion evidence for claims filed before March 27, 2017." 20 C.F.R. § 404.1527. The "treating physician rule" and Social Security Rulings ("SSRs") 96-2p, 96-5p, and 06-03p, were rescinded as of March 27, 2017, and claims filed after that date are not covered by these rulings. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017); *see also* 20 C.F.R. §§ 404.1520c, 416.920c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Claims filed prior to March 27, 2017, such as this one, are still covered by these rules and regulations. In this case, the ALJ applied the rules and regulations that were in effect at the time of the decision, and the Court will do the same.

the ALJ's consideration of Dr. Bean's opinions and that the ALJ gave good reasons for affording his opinions little weight.

In formulating a decision, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 404.1527.2. While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)).

When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Id.* The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376. If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature of the treatment relationship, the specialization of the medical source, and the consistency and supportability of the opinion. *Id.* As argued by the Commissioner, however, the ALJ is not required to engage is a protracted discussion of the

reasons. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence rejection of treating physician's opinion, which rejection "reach[ed] several of the factors that an ALJ must consider," satisfied good reasons requirement); *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("The ALJ reasoned that Dr. Lin's conclusions are 'not well supported by the overall evidence of record and are inconsistent with other medical evidence of record.' This is a specific reason for not affording controlling weight to Dr. Lin.").

The opinions of consulting and non-examining doctors are not subject to the requirements of the treating physician rule. *See e.g., Brown v. Comm'r of Soc. Sec.*, 591 F. App'x 449, 451 (6th Cir. 2015); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274–75 (6th Cir. 2015); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013). Although an ALJ is "not bound by any findings" made by non-treating physicians, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate a consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(c)(2)-(6), the same factors used to analyze the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(e)(2)(ii); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including

supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

Dr. Bean provided psychological treatment to Plaintiff every two weeks, and at times once a week, for several years. As argued by Plaintiff, the duration of his treatment of Plaintiff was lengthy and the frequency of his contact with her was substantial. On August 24, 2016, Dr. Bean opined Plaintiff had a severe impairment in concentration and social ability, could not carry out simple one to two step instructions or maintain a work routine without frequent breaks for stress related reasons, could not maintain an ordinary work routine without inordinate supervision, could not respond appropriately to routine stress and changes, and could not maintain a work schedule without frequent absences, but could care for herself and maintain independence in daily living and had moderate impairment in memory (Tr. 454-56). Dr. Bean has very few progress notes in the record, but his notes from November 2016 and January, February, and March 2017 state that Plaintiff's symptoms include anger, anxiety, depression, hallucinations, mania, mood swings, obsessive, paranoid, and worry (Tr. 530-33). In a second medical source statement dated April 13, 2017, Dr. Bean opined Plaintiff would miss more than three days per month from work due to her impairments or treatment, suffered from extreme restrictions in activities of daily living, suffered from marked difficulties in maintaining social functioning, suffered from marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and suffered continual decompensation in work or work-like settings (Tr. 525-29). The ALJ accorded "little weight" to Dr. Bean's opinions for the stated reason that they were "not consistent with the longitudinal medical record and he does not provide any objective support for his severe limitations." (Tr. 19).

As pointed out by Plaintiff, the ALJ did not mention that Dr. Bean provided psychological treatment to Plaintiff for several years, either weekly or biweekly. Plaintiff argues that the ALJ erred by not considering the frequency, nature and extent of the treatment relationship between Plaintiff and Dr. Bean. The ALJ's failure to address the frequency and duration of Dr. Bean's treatment is made worse by the fact that two consulting sources, Rebecca Sweeney, Ph.D. and E. Layne, M.D., mistakenly thought Dr. Bean was not a treating source. Dr. Sweeney indicated she was giving little weight to Dr. Bean's opinion on February 17, 2016, because she erroneously believed Dr. Bean had not seen Plaintiff since 2012 (Tr. 74). On April 22, 2016, Dr. Layne reviewed the records and inaccurately noted Dr. Bean was not a treating source (Tr. 67). Because the ALJ did not discuss the frequency and duration of the treating relationship, the impact of these conclusions is not addressed.

From the ALJ's opinion, however, it appears that the ALJ was well aware of the treating relationship between Dr. Bean and Plaintiff (Tr. 19 *citing* Exhibits 8F (Tr. 454-59) & 12F (Tr. 525-37)). The ALJ's failure to mention the frequency and duration of that treating relationship, standing alone, would not require remand as the ALJ's analysis does not have to be all inclusive as long as it is supported by substantial evidence. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider [the length of the treatment relationship and the frequency of examination], they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." (citation omitted)); *Allen*, 561 F.3d at 651 (holding ALJ's brief one-sentence rejection of treating physician's opinion satisfied "good

reasons" requirement because it reached several of the factors an ALJ must consider in addressing such an opinion). In this case, however, the Court has other concerns.

Plaintiff mainly argues that the ALJ erred in considering Dr. Bean's opinions because Plaintiff's treatment records do not show nearly as much symptom improvement as inferred by the ALJ. The ALJ noted that prior to the December 2012 alleged disability onset date, Plaintiff obtained primary care at Manchester Family Medicine ("MFM") (Tr. 17, 305-26). Treatment notes from visits in 2012 and 2013 generally reflect that Plaintiff was seen for physical ailments/issues and mainly reported that her anxiety and depression symptoms were mostly stable and improved on medication (Tr. 17, 297-26). In 2014, she was treated at MFM, for mostly various physical ailments (Tr. 287-96). However, in January 2014, Plaintiff reported worsening anxiety, sleep disturbance, and decreased energy that were attributed, at least in part, to the stress caused by the death of her mother (Tr. 293). By March and again in June 2014, Plaintiff reported that her anxiety/depression was stable and, on examination, she was found to be alert, oriented and pleasant (Tr. 287, 289-92).

In March 2015, MFM records note Plaintiff's complaints of various physical ailments plus anxiety, racing thoughts, panic attacks/chest pains, and/or lack of concentration, and her medications were adjusted and changed to address her mental health issues (Tr. 277, 279-80, 283-84, 288, 290, 294). At follow-up visits, in May, June, July, and August 2015, Plaintiff reported that her anxiety was stable (with no panic attacks, side effects, racing thoughts, or hallucinations), and that her medication was helping with her ability to concentrate and stay on task, and with her mood/behavior (Tr. 269-78). However, in December 2015, Plaintiff was admitted to a hospital for five days for crisis stabilization due to depression and suicidal ideations (Tr. 234-44). The ALJ

correctly observed that records from her stay at the hospital indicate Plaintiff reported "significant improvement" in her mood and anxiety while in treatment and was noted as having "a fairly robust response in terms of her affect and her anxiety" (Tr. 18, 237).  In addition, she participated well in group activities at the hospital, and she was discharged home with instructions to follow up with outpatient treatment (Tr. 18, 237-38).

After being discharged from the hospital, Plaintiff received mental health treatment from Volunteer Behavioral Health Care System ("VBHCS") and Volunteer Family Medical Clinic ("VFMC").  At an appointment with VFMC in May 2016, Plaintiff's medication was adjusted and she was prescribed a mood disorder medication, Lamictal (Tr. 469).  In June 2016, Plaintiff reported that the Lamictal was helping some of her symptoms, but it was also determined her dosage should be increased (Tr. 467-68).  In July 2016, Plaintiff reported her mood swings were helped with the increased dosage of Lamictal but her anxiety medication needed to be increased due to various stressors (Tr. 465).  In August and September 2016, VFMC noted that Plaintiff "will have panic attacks around crowds often." (Tr. 461, 463).

As argued by Plaintiff, she told her counselor at VBHCS in April 2016 that she had a bad panic attack and in June 2016 she reported having an anxiety attack (Tr. 446, 453).  Plaintiff essentially cites these records as support for Dr. Bean's opinions and as contrary to the ALJ's conclusions.  The VBHCS notes from the June appointment state "cl reports she has been med compliant, but is now taking lamictal from pep which cl states she feels it is helping. cl reports valium is also helpful with anxiety as well . . . cl continues to see therapist *weekly*, but does continue to struggle with symptoms of depression." (Tr. 453) (emphasis added).  The ALJ cited the VBHCS treatment records in her decision finding they showed in June 2016 that Plaintiff

reported, "that medication (Lamictal and Valium) were working well and she was making progress applying learned coping skills to deal with increased stressors." (Tr. 18, 444, 446, 453).

The ALJ observed that records from VFMC show Plaintiff mostly was treated with medication management and was regularly noted as being in no acute distress, fully oriented, in an upbeat mood, with good memory recall, with intact insight and judgment, and with appropriate thought process (Tr. 18, 435-40, 461-74). While Plaintiff indicated that her medications "greatly diminished her mood swings" and helped with her anxiety and manic episodes, based on a conversation with Dr. Bean, VFMC increased Plaintiff's anxiety medications in July to further attempt to address Plaintiff's stressors (Tr. 465).

The Court finds the record supports the ALJ's conclusion that Plaintiff's mental health issues/impairments respond to proper medication and treatment (Tr. 18-19, 237-38, 269-78, 452-53, 465). *See Smith v. Comm'r of Soc. Sec.,* 564 F. App'x 758, 762-63 (6th Cir. 2014) (substantial evidence supported the ALJ's conclusion that plaintiff did not meet the listing for ADHD based in part on plaintiff's testimony that medication improved her ADHD). In spite of hearing testimony indicating to the contrary,[3] Plaintiff reported to medical providers at times that she was able to

_____

[3]While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, Plaintiff's subjective statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 19). Plaintiff has not contended that substantial evidence fails to support the ALJ's subjective statements determination. In making this determination, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). While SSR 16-3p eliminates the use of the term "credibility" from SSA policy, much of the existing case law refers to "credibility" evaluations, and this Order may occasionally refer to the ALJ's analysis with cases using the same term.

handle certain activities of daily living and was the primary caregiver for her children and grandchildren (Tr. 16, 239, 242, 465). Moreover, as the ALJ noted, the record contains medical findings that indicate Plaintiff functioned reasonably well in spite of her significant mental health limitations, at least while properly medicated and treated (Tr. 19-20, 287-304, 435-40, 461-74). *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (ALJ appropriately considered plaintiff's ability to perform daily activities as part of overall analysis of disability claim). As the ALJ observed, Plaintiff's mental health-related impairments existed for at least two years and Plaintiff "relies, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of these mental disorder(s)." (Tr. 16).

Also as argued by the Commissioner, the ALJ's conclusion that Plaintiff is capable of a range of work despite her mental impairments is supported by the assessments of State agency psychological consultants—Dr. Sweeney, who reviewed the file in April 2016, and Jenaan Khaleeli, Psy.D., who reviewed the file in January 2017 (Tr. 19, 70-76, 87-96). However, as previously noted, Dr. Sweeney indicated she was giving little weight to Dr. Bean's opinion on February 17, 2016, at least in part because she mistakenly believed Dr. Bean had not seen Plaintiff since 2012.

Dr. Khaleeli agreed with Dr. Sweeney's assessment that Plaintiff had the ability to understand and remember simple and lower level detailed tasks; could maintain concentration, persistence, and pace for the normal workweek under normal supervision for such tasks; could appropriately relate to supervisors and infrequently with co-workers, but could not interact with the general public; and could adapt to infrequent change. The ALJ found Drs. Khaleeli and

Sweeney's opinions were consistent with the longitudinal record, and she accorded their opinions "great weight" in assessing mental limitations (Tr. 19, 70-76, 87-96).[4] Their opinions do support the ALJ's conclusion that Plaintiff retained the ability to perform a range of work despite her mental impairments, and was not as limited as Dr. Bean suggested.

As argued by the Commissioner, the regulations provide that ALJs are to consider the opinions of such state agency psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1); *see also* 20 C.F.R. § 404.1527; *Reeves v. Comm' r of Soc. Sec.*, 618 F. App'x 267, 274-75 (6th Cir. 2015) ("Generally, an ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources. Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record.") (citations omitted)). A properly balanced analysis can allow the Commissioner to defer ultimately more to the opinions of consultative doctors than to those of treating physicians. *See* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from . . . medical . . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (citing SSR 96-6p). However, in this case it is unknown whether Drs. Khaleeli and Sweeney fully considered the

---

[4] The ALJ also considered the report of a consultative psychological examiner, Jerry Campbell, Psy.D., H.S.P. (Tr. 18-19, 475-80). Dr. Campbell examined Plaintiff in December 2016 and opined that Plaintiff had mild impairment in her ability to sustain concentration, showed evidence of a moderate impairment in her social relating, and appeared to be moderately to markedly impaired in her ability to adapt to change due to her anxiety symptoms (Tr. 475-80). As the ALJ found the longitudinal record did not support Dr. Campbell's finding of marked limitation in Plaintiff's ability to adapt to change, the ALJ accorded Dr. Campbell's findings only partial weight (Tr. 19).

extent and nature of Dr. Bean's treatment given the apparent, but unaddressed mistake, regarding the frequency and duration of Dr. Bean's treating relationship with Plaintiff.

Although the ALJ found Plaintiff was not as limited by her mental impairments as Dr. Bean opined, the ALJ concluded Plaintiff's anxiety disorder, bipolar disorder, borderline personality disorder, PTSD, and ADHD were severe. Although the ALJ ultimately concluded that Plaintiff was not as severely limited by her mental impairments as Dr. Bean suggested, the ALJ also found Plaintiff had work limitations attributable to her severe anxiety disorder, bipolar disorder, borderline personality disorder, PTSD, and ADHD. In assessing Plaintiff's RFC, the ALJ accommodated these problems by restricting Plaintiff to simple, routine, repetitive tasks not at a production rate pace, to work requiring only simple work-related judgments and only infrequent and gradual changes in routine and work setting, and to work requiring no contact with the public and only occasional contact with coworkers and supervisors. *See* SSR 96-8p (mental work capacity is expressed as "work related" functions like the ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

As noted above, the record contains very few treatment or progress notes from Dr. Bean given the length and frequency of his reported treatment of Plaintiff. Yet, the record clearly reflects that Plaintiff attends appointments either weekly or every other week with Dr. Bean (Tr. 525), monthly appointments with VFMC (Tr. 435-442), and at least monthly appointments with VBHCS (Tr. 245-55, 443-53). In determining the RFC, the ALJ must consider "all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(1); *see also* 20 C.F.R. § 404.1529(c) ("How we evaluate symptoms, including pain."). Moreover, per SSR 96-8p, an ALJ assesses a claimant's

RFC, or the claimant's ability to perform "sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." 1996 WL 374184, at *1 (July 2, 1996). This assessment must include the "effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (*e.g.,* frequency of treatment, duration, disruption to routine, side effects of medication)." *Id.* at *5. Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment "is medically necessary and concerns the conditions on which the disability claim is founded." *Griffin v. Comm'r of Soc. Sec.*, No. 2:15-CV-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017) (citations omitted); *see also Hartman v. Colvin*, 954 F. Supp. 2d 618, 626 (W.D. Ky. 2013); *Robinson v. Astrue*, No. 1:10-CV-689, 2011 WL 6217436, at *6-7 (S.D. Ohio Dec. 14, 2011).

The medical treatment—weekly or biweekly sessions with Dr. Bean, monthly appointments with VFMC, and monthly or more appointments with VBHCS—is clearly relevant to the conditions Plaintiff claims to be disabling. *See Griffin*, 2017 WL 991006, at *2 (citations omitted); *Thornton v. Colvin*, No. CV 15-0407, 2016 WL 1136627, at *13 (E.D. La. Feb. 29, 2016) (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000)) ("The Fifth Circuit has held that if an individual's medical treatment interrupts her ability to perform a normal, eight hour workday, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity."), *report and recommendation adopted*, No. CV 15-0407, 2016 WL 1110231 (E.D. La. Mar. 22, 2016). The record contains no objective indication regarding how long Plaintiff's treatments with Dr. Bean last, but the record does reflect his conclusion that Plaintiff will miss work due to her impairments *or treatment* more than three times a month (Tr. 526) (emphasis added). The VE testified that a hypothetical person who would be absent from work

three days a month could not perform Plaintiff's past work as a house cleaner or any other work (Tr. 58-59).  In deeply discounting Dr. Bean's opinions, the ALJ failed to address this question of absenteeism.

Even though the record contains evidence of extensive mental health treatment that appears to be medically necessary, there is no indication of the ALJ's position concerning absenteeism and its impact on Plaintiff's ability to perform substantial gainful activity.  While the ALJ gave Dr. Bean's opinion little weight, which might include Dr. Bean's opinion that Plaintiff would miss work at least three days per month, the ALJ also recognized that Plaintiff "relies, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of these mental disorder(s)." (Tr. 16).  Given this recognized need for ongoing treatment and therapy, the ALJ should have addressed Plaintiff's extensive treatment in connection with the issue of absenteeism.  As in *Hartman*, in this case the ALJ makes no findings that specifically relate to the question of whether Plaintiff's "treatment history was for medically necessary treatment and whether such history would present an accurate basis on which to project future treatment-related absenteeism" from the house cleaner or alternative work identified by the VE.  *Hartman*, 954 F. Supp. 2d at 645.

There is no doubt that Plaintiff suffers from severe, multifaceted mental health issues.  Although not using the word "absenteeism," Plaintiff argues to this Court that the ALJ failed to account for Plaintiff's need to miss work at least three days per month due to medical treatment [*see* Doc. 13 at Page ID # 649-52].  Perhaps because of Plaintiff's focus on Dr. Bean's opinion, the Commissioner did not specifically address this additional argument or absenteeism in its response to Plaintiff's motion.  As a result, upon considering the uncontradicted record of

extensive, ongoing treatment/therapy and the lack of discussion by the ALJ and the Commissioner regarding Plaintiff's absenteeism, the Court is unable to find that the conclusions made by the ALJ are supported by substantial evidence on the current record. *See Hartman*, 954 F. Supp. 2d at 645 (remanding where the ALJ makes no absenteeism finding and the "Commissioner makes no reference whatsoever to this issue, even to argue harmless error in light of the remaining findings of the decision.")

Accordingly, remand is warranted for consideration of whether the frequency of Plaintiff's medically necessary treatment/therapy is work-preclusive and the decision of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) so that the ALJ may have the opportunity to address this material issue. *See Hartman*, 954 F. Supp. 2d at 646 (citations omitted); *Griffin*, 2017 WL 991006, at *3. In doing so, the Commissioner should also determine if additional development of the record of Dr. Bean's frequent and extended treatment of Plaintiff is necessary or whether proper classification of him as a treating source would alter the opinions of the state agency psychological consultants. Given that this matter is being remanded so that the ALJ can consider and discuss Plaintiff's absenteeism, the Court concludes it would be advisable on remand for the ALJ to include an explicit discussion of the frequency and duration of Dr. Bean's treatment of Plaintiff in conjunction with a more detailed evaluation of the weight given his opinion even though such an explicit consideration is not required or warranted in every case.

## V.     CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, it is **ORDERED** that:

> 1) Plaintiff's motion for judgment on the pleadings [Doc. 12] is **GRANTED IN PART** to the extent it seeks remand to the

Commissioner and **DENIED IN PART** to the extent it seeks an
award of benefits;

2) The Commissioner's motion for summary judgment [Doc. 18] is
**DENIED**; and

3) The Commissioner's decision denying benefits is **REVERSED** and
**REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

SO ORDERED.

ENTER:


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE